```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN C. WILLIAMS,

                    Plaintiff,          1:17-cv-01117-MAT
         -v-                            **DECISION AND ORDER**


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____
```

**INTRODUCTION**

John C. Williams ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order, and Defendant's motion is denied.

**PROCEDURAL BACKGROUND**

On April 21, 2014, Plaintiff protectively filed for DIB, alleging disability beginning January 28, 2011, due to posttraumatic stress disorder ("PTSD"), retinal scarring in the

left eye, diabetes, depression, and anxiety. Administrative Transcript ("T.") 53. The claim was initially denied on June 5, 2014, and Plaintiff timely requested a hearing. T. 59-69. On June 9, 2016, a hearing was conducted via videoconference in Kansas City, Missouri by administrative law judge ("ALJ") Michael A. Lehr. T. 28-51. Plaintiff appeared *pro se* via videoconference in Buffalo, New York and testified. An impartial vocational expert ("VE") also testified.

The ALJ issued an unfavorable decision on August 5, 2016. T. 12-27. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. T. 107. The Appeals Council denied Plaintiff's request for review on September 8, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-5. Plaintiff then timely commenced this action.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2013. T. 12.

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 28, 2011 through his date last insured of December 31, 2013. T. 17.

2

At step two, the ALJ determined that Plaintiff suffered from the "severe" impairments of diabetes mellitus, obesity, anxiety, depression, PTSD, and polysubstance abuse. *Id*. The ALJ also determined that Plaintiff's medically determinable impairments of hypertension, retinal scarring of the left eye, history of left hallux surgery, and back spasms created no significant work-related functional limitations and thus were non-severe. T. 18.

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ specifically considered Listings 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), and 12.09 (Substance Addiction Disorders).

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: limited to simple unskilled work with no contact with the general public and only occasional contact with co-workers and supervisors. T. 9-20.

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work as a van driver, over the road truck driver, or tow truck driver.

At step five, the ALJ relied on the VE's testimony to find that, taking into account Plaintiff's age, education, work experience, and RFC, there are unskilled jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laundry worker II, order filler, and hand packer. T. 23. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. *Id.*

## SCOPE OF REVIEW

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of

review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

Plaintiff contends that remand of this matter is warranted because the ALJ's decision was not supported by substantial evidence. In particular, Plaintiff argues that: (1) the ALJ failed to address or weigh the opinion of clinical psychologist Dr. William Reynolds; (2) the ALJ failed to develop the record in light of Plaintiff's *pro se* status; and (3) the ALJ erred in substituting his own "medical" judgment for that of a physician. For the reasons discussed below, the Court finds that the ALJ failed to properly support his decision with substantial evidence. Accordingly, the Court finds that remand of this matter for further administrative proceedings is required.

**I. The Medical Evidence of Record**

**A. The Opinion of Psychologist Dr. William Reynolds**

On July 9, 2010, Plaintiff underwent an initial evaluation for PTSD conducted by Dr. Reynolds of the Department of Veterans Affairs (Veterans Administration or "VA"). T. 203-07. During the exam, Plaintiff denied any hospitalizations for mental health issues, but reported that he had been treated for drug and alcohol use in October 2002, December 2006, and May 2007. Plaintiff further

5

reported that his drug and alcohol use led to his incarceration from June 2008 to June 2010, where he sought mental health services. T. 203. Plaintiff reported he was not currently taking any psychiatric medication but was scheduled to meet with a psychologist and potentially a psychiatrist to begin mental health services. Plaintiff reported his psychological symptoms had recently worsened and that he had problems with nightmares, sleep disturbances, hypervigilance, and social withdrawal. *Id*.

Plaintiff reported that in April 1986, while serving in the United States Navy, he was confronted in his vehicle by an armed robber who shot him in the head and both legs. T. 204. Plaintiff sustained injuries to his left eye, right thigh, and left ankle. Following his honorable discharge in 1988, Plaintiff returned to Buffalo, New York and began working with construction cable doing demolition. Plaintiff reported he was laid off and fired from a variety of jobs over the years due to his drug and alcohol use. *Id*.

Plaintiff reported he was married for about two years in the 1990s and that he had a nineteen-year-old son with whom he maintained a fair relationship. Plaintiff remarried in 2004 but separated in 2006. Plaintiff reported that he had no friends and that his only leisure pursuit was reading. T. 205. He further reported a poor appetite and that he had difficulty in crowded situations, which restricted him from when he was willing to go shopping. He did not have a license and did not drive. He reported

6

symptoms of a panic disorder and that on a daily basis he had episodes of heart palpitations and headaches. He also reported symptoms of a mood disorder that started when he was discharged from service and had since worsened. Plaintiff stated that more days than not in the past month he had experienced a low mood with teary eyedness, as well as guilt. He also reported irritability, feeling hopeless and having lost interest in the things he liked. He reported low energy and feeling worthless, difficulty concentrating, less pleasure from life, and social withdrawal. *Id*. Plaintiff reported suicidal ideation with no intent to follow through. He denied homicidal ideation or any experiences of manic episodes in the past. T. 206.

Upon examination, Plaintiff was cooperative with an adequate manner of relating. His eye contact was appropriate and he exhibited fluent speech with a clear quality of voice. Plaintiff exhibited a dysphoric affect and dysthymic mood. He appeared fully oriented to person, place, and time. Plaintiff's memory skills appeared to be mildly impaired and he was only able to recite two digits backward. He appeared to have a below average intellectual capability, with poor insight and fair judgment. T. 205.

Dr. Reynolds diagnosed Plaintiff with chronic PTSD, panic disorder without agoraphobia, depressive disorder, alcohol dependence in sustained full remission, and polysubstance abuse in sustained full remission. He assessed Plaintiff's Global Assessment

of Functioning ("GAF") at 50. Dr. Reynolds opined that Plaintiff's alcohol and polysubstance abuse more likely than not were forms of self-medication and therefore were proximately due to or a result of his PTSD. T. 206.

**B. VA Treatment Records**

At the hearing, Plaintiff testified he received all of his medical treatment from the VA. T. 32. Indeed, the medical record consists entirely of VA records dated from July 6, 2010, to May 18, 2016. T. 183-435. A review of these records show Plaintiff received mental health treatment in both individual and group therapy sessions. *See, e.g.,* T. 216, 231-32, 318.

The records indicate Plaintiff saw treating psychiatrist Dr. Mohammad Saeed approximately every four months for scheduled PTSD treatment sessions from 2012 through 2016. *See* T. 186-201, 369-81. On March 25, 2014, Plaintiff admitted to hypervigilance and avoidance behaviors, and Dr. Saeed noted psychosis. T. 216. On February 9, 2016, Plaintiff reported that lately he was easily aggravated and irritable and had been getting into arguments. Dr. Saeed recommended Plaintiff start anger management groups. T. 318. On June 8, 2016, Plaintiff reported he was concerned about his drinking and agreed to going to a walk-in evaluation. T. 383. On both July 9, 2012, and May 28, 2013, Dr. Saeed assessed Plaintiff's GAF at 58. T. 202. Overall, Dr. Saeed's treatment notes

provide minimal details and no functional assessments. *See, e.g.,* T. 216, 279, 286, 318.

On January 22, 2014, Plaintiff checked himself into the VA's emergency department seeking treatment for his alcohol and substance addictions. T. 250. On January 24, 2014, Plaintiff completed a Mental Health Diagnostic Study in connection with his addiction treatment. T. 233-49. Plaintiff reported that he had felt depressed, anxious, angry, or very upset throughout most of the day, for the majority of the past month. T. 234. He further reported that in the past two weeks, there were several days he had felt little interest or pleasure in doing things, and felt down, depressed, or hopeless. He reported trouble concentrating, a poor appetite or overeating, and that he felt bad about himself or that he was a failure more than half the days during the past two weeks. T. 237. Based on the diagnostic study, Plaintiff was recommended for outpatient group and individual treatment. T. 248.

It does not appear from the medical records that an RFC assessment questionnaire was submitted to Dr. Saeed, or any of Plaintiff's treatment providers at the VA, nor does the ALJ indicate in his decision or elsewhere that any assessments were requested.

**II. The RFC Determination Is Unsupported By Substantial Evidence**

Plaintiff argues the ALJ's decision is unsupported by substantial evidence because the ALJ (1) failed to address Dr.

9

Reynolds opinion; (2) failed to develop the record in light of the lack of opinion evidence and Plaintiff's *pro se* status; and (3) in lieu of any opinion evidence, impermissibly substituted his own "medical" judgment for that of a physician's.

**A.   The ALJ's Omission of Dr. Reynold's Opinion**

In his decision, the ALJ did not address, evaluate, or weigh Dr. Reynold's July 9, 2010, examination findings or opinion because they pre-dated the disability onset date. Instead, the ALJ stated that "there are virtually no medical records concerning [Plaintiff's] mental impairments from the alleged onset date to May 2013." T. 20. The ALJ also found that the "only opinion evidence comes from service connected disability ratings from [VA] records" which he assigned "some" weight to, noting that because the VA criteria for determining disability are not identical to those of Social Security, an ALJ may afford less than full weight to a VA disability opinion or rating, as long as the ALJ provides specific, persuasive reasons based on medical evidence of record. T. 21-22.

The Commissioner argues that Dr. Reynold's examination and opinion had limited, if any probative value, because it predated the relevant period by six months. The Commissioner further argues that because the VA's disability ratings were based on Dr. Reynold's examination and opinion and because the ALJ considered the VA's disability rating, the ALJ did not err in omitting his opinion from the decision.

An ALJ is not required to evaluate medical opinions that pre-date the relevant time period of a disability application. *Williams v. Colvin*, 98 F. Supp.3d 614, 631 (W.D.N.Y. 2015) ("the ALJ is under no obligation to consider evidence from a time before the relevant period") (internal citation and quotation marks omitted). The relevant period for disability benefits extends from the alleged onset date to the date of the ALJ's decision. Plaintiff is alleging disability as of January 28, 2011. Accordingly, Dr. Reynold's examination and assessment from July 2010, falls outside of the relevant period and thus, the ALJ was not required to evaluate or consider it. However, by not evaluating Dr. Reynold's opinion or using it to support the RFC finding, the ALJ's decision impermissibly lacks any medical opinion on which it is based. This is error.

B. **The ALJ's Duty to Develop the Record**

The ALJ stated the RFC finding was supported by a review of Plaintiff's physical and mental status findings from January 28, 2011 through December 31, 2013 (the alleged onset date and the date last insured). The ALJ further stated that the nature and frequency of his treatment suggested that Plaintiff's condition did not warrant significant medical attention between that time. T. 22. However, as noted above, the RFC finding was not based on any medical opinion because no medical opinion was sought or obtained for the relevant period.

11

While it is not error *per se* for an ALJ to make an RFC determination without relying on a medical opinion, the determination must be supported by substantial evidence. *See Tankisi v. Commissioner*, 521 F. App'x 29 (2d Cir. 2013). Furthermore, an ALJ is not qualified to assess a claimant's RFC based on bare medical findings. *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Daily v. Astrue*, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010)). Where the record is "devoid of any opinions from treating or examining medical sources regarding [the] Plaintiff's functional or work capacity limitations . . . the ALJ [is] obligated to develop the record and obtain RFC assessments from [the] Plaintiff's treating and/or examining physicians." *Jermyn v. Colvin*, No. 13-CV-5093, 2015 WL 1298997 at * 19 (E.D.N.Y. Mar. 23, 2015). An ALJ's failure to do so necessitates remand. *Id.*; *see also Lilley v. Berryhill*, 307 F. Supp.3d 157, 160 (W.D.N.Y. 2018) (remanding where the record lacked a useful medical opinion by any treating or examining source that addressed whether and to what extent plaintiff's mental impairments impacted her ability to perform work-related functions).

Furthermore, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative duty to develop the administrative record. *Perez v. Charter*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human*

*Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). This duty is heightened when, as here, the claimant is not represented by counsel at the administrative hearing. *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) ("The ALJ must 'adequately protect a *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered' and by 'scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts.'" (internal quotation marks omitted). "Where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Perez v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted); *see also Morris v. Colvin*, No. 14-CV-689S, 2016 WL 3085427 at *4 (W.D.N.Y. June 2, 2016) (finding no error in the ALJ's determination to not further develop the record where the ALJ had before him an adequate medical history to render a decision).

Here, the ALJ failed to fulfill his heightened duty to develop the record in light of Plaintiff's *pro se* status. The record contains no RFC assessments or opinions from consultative examiners, state agency medical consultants or experts. Instead, the ALJ classified the VA's service-connected disability ratings as opinions and purported to give them "some" weight. T. 21-22. The records indicate Plaintiff carried a service-connected rating of

80 percent, with a 70 percent rating for PTSD. T. 202, 381. In his decision, the ALJ noted that on May 2, 2014, April 11, 2016, and June 17, 2016, Plaintiff's rating was 50-100 percent. T. 21 *referring to* T. 183, 301, 367. Notably, the service-connected disability ratings give no functional assessments and instead simply state Plaintiff's VA disability benefits eligibility.

As already established, the ALJ was within his discretion to ignore Dr. Reynold's examination findings and opinion. However, with no function-by-function assessment available in the record, the ALJ was not free to assess Plaintiff's RFC based on bare medical findings and his own lay opinion. His failure to further develop the record and obtain a functional assessment of Plaintiff's mental limitations warrants remand. *See Jermyn*, 2015 WL 1298997 at * 19 (where "none of these medical sources assessed Plaintiff's functional capacity or limitations," the ALJ's RFC determination was "wholly unsupported by any medical evidence," and further development of the record was necessary).

Moreover, and as Plaintiff further argues, it is well-established that an ALJ may not substitute his or her own judgment for that of a physician. But without a functional assessment to base the mental limitations of the RFC determination on, the ALJ did so here, further warranting remand. *See McCarthy v. Colvin*, 66 F. Supp.3d 315, 322 (W.D.N.Y. 2014) ("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an

14

explanation of the claimant's functional capacity from a doctor is required.") (quoting *Zorilla v. Chater*, 915 F. Supp. 662, 666-67 (S.D.N.Y. 1996)); *Henley v. Berryhill*, No. 17-CV-445-FPG, 2018 WL 3866670, at *4 (W.D.N.Y. Aug. 15, 2018) ("The ALJ cannot 'play doctor,' . . . and rely on his lay opinion over . . . [a] competent medical opinion[.]").

The Commissioner argues that the ALJ was allowed to formulate the RFC finding without relying upon a medical opinion. While there is case law supporting this contention, the allowance is circumstantial and depends on the evidence of record showing relatively minor impairments or where the record contains sufficient evidence from which the ALJ can assess the claimant's functional capacity. *See, e.g., Tankisi*, 521 F. App'x at 33-34 (although the record did not include opinions on plaintiff's RFC from treating physicians, it was nonetheless extensive and did include an assessment of plaintiff's limitations from a treating physician); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (although the ALJ rejected the treating physician's medical assessment, she relied on his detailed treatment notes dating back to before the alleged onset date, which documented plaintiff's mood, energy, and affect, as well as plaintiff's robust social activities).

Here, the ALJ acknowledged the medical record was limited and based the RFC's mental limitations on Plaintiff's psychiatric

history and allegations, including his testimony. T. 20-21. This acknowledgment clearly distinguishes the case law on which the Commissioner relies, notably demonstrating that Plaintiff's medical record was not detailed and extensive enough to properly support an RFC determination. And the ALJ's step two finding that Plaintiff suffered from the "severe" mental impairments of anxiety, depression, PTSD, and polysubstance abuse, further undermines the Commissioner's argument that an RFC assessment from a medical professional was unnecessary. *See Lilley*, 307 F. Supp.3d at 161 (citing *Jones v. Colvin*, No. 14-CV-556S, 2015 WL 5126151 at *4 (W.D.N.Y. Sept. 1, 2015) ("because the ALJ concluded that [p]laintiff's depression was significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consultative examiner quantifying [p]laintiff's mental limitations rendered the record incomplete")). Moreover, leeway given to ALJ's to make "common sense judgments" without a medical professional's opinion typically does not extend to RFC determinations of mental limitations, "which are by their very nature highly complex and individualized." *Id*. (internal quotation marks omitted). Accordingly, the Court finds that Plaintiff's mental impairments required an evaluation and opinion from a medical professional to properly assess his mental residual functional capacity. Without any such opinion, the Court finds the

ALJ's RFC finding is unsupported by substantial evidence and remand is required. On remand, the ALJ shall obtain an opinion regarding Plaintiff's functional capacity from an appropriate medical source.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Doc. 16) is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's opposing motion for judgment on the pleadings (Doc. 19) is denied. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:   May 21, 2019
         Rochester, New York